A. T. POWELL V. A. D. THOMPSON ET AL.

No. 7005.   Decided January 19, 1938.
(112 S. W., 2d Series, 173.)

*Leake, Henry & Young* and *Hawkins Golden,* all of Dallas, for plaintiff in error.

On the proposition that the contract was one of suretyship. McDonough v. First Natl. Bank, 34 Texas 307; Alamo City Business College v. Earthman, 17 S. W. (2d) 1116; Pierce Co. v. Rude, 291 S. W. 974.

*Read, Lowrance & Bates,* of Dallas, for defendants in error.

The contract was not one of suretyship. Brokaw v. Collett,

230 S. W. 790; Security Natl. Bank v. Kynerd, 228 S. W. 123; 50 C. J. 12.

The appointment of a receiver for the insolvent corporation did not relieve the incorporators from the performance of their original contract and did not release them from damages resulting from the breach thereof. Kingsville Cotton Oil Co. v. Dallas Waste Mills, 210 S. W. 832; Henry v. McCardell, 15 Texas Civ. App. 497, 40 S. W. 172; Karakey v. Mollohan, 15 S. W. (2d) 692.

Mr. Judge Hickman delivered the opinion of the Commission of Appeals, Section A.

The parties will be designated as in the trial court, wherein A. D. Thompson was plaintiff, H. A. Kinnison, A. T. Powell and W. Schwan were defendants. The trial court sustained a general demurrer to plaintiff's petition and upon his failure further to amend dismissed the cause. The Court of Civil Appeals reversed the trial court's judgment and remanded the case thereto for trial on its merits. 85 S. W. (2d) 945. Powell alone brings error.

The suit was for damages for the breach of a written contract. The parties have stipulated in this court that an error was made in copying the contract which the plaintiff attached as an exhibit to his petition and have filed in this Court an agreed corrected copy of the contract with the request that it be considered in lieu of the copy attached as an exhibit. Since the opinion of the Court of Civil Appeals was based upon the copy attached as an exhibit to plaintiff's petition containing some provisions materially different from those in the corrected copy, it is deemed advisable to set out the contract in full. It is as follows:

"STATE OF TEXAS

COUNTY OF DALLAS

"THIS AGREEMENT made and entered into on this the 5th day of November, 1929, by and between A. D. Thompson, hereinafter called first party, and H. A. Kinnison, A. T. Powell and W. Schwan, hereinafter called second parties, all of Dallas County, Texas,

WITNESSETH:

"THAT WHEREAS, said second parties have agreed to organize a corporation under the laws of the State of Texas to be known as the SCHWAN GAS BURNER COMPANY, located at Dallas, Texas, with a capital of two hundred and fifty shares of preferred stock of $100.00 par value, making the sum of $25,000.00 cash and three hundred and seventy-five shares of no-par value, and said

company to be organized for the purpose of manufacturing the Schwan gas burner, patent to which is now being perfected by W. Schwan and owned by W. Schwan and he has agreed to make a contract with said Schwan Gas Burner Company for the exclusive right and option to manufacture and sell said gas burners in the United States, including all improvements of every kind and character which may be made by said W. Schwan, or anyone working with him or under his direction, and said contract to be for a period of time of the life of said patent or any improvements thereon; and said company to acquire by purchase at an agreed inventory value the tools, equipment, raw materials and manufactured products of Gillespie & Schwan, Inc., and said Schwan Gas Burner Company is to begin the sale and manufacture of the Schwan Gas Burner, a patented product, in the City and County of Dallas, State of Texas, as soon as said charter is secured and said charter to be secured without unnecessary delay and not later than December 1, 1929.

"The said first party agrees to subscribe and pay for sixty shares of the preferred par value stock of said corporation, being in the sum of $6,000.00 and in addition to said preferred par value stock, the said first party is to receive thirty shares of the no-par value stock of said corporation.

"The said second parties agree that said corporation when organized will employ said first party to assist in the manufacturing and sale of said Schwan Gas Burners and such products as said company may manufacture and sell and to pay said first party the sum of $300.00 per month salary beginning December 1, 1929, and so long as the services of said first party shall be satisfactory with the Directors of said company he shall continue in the employ of said company at a salary of not less than $300.00 per month and if the Directors of said Company deem it advisable and the services of first party justify the increase of said salary at any time in the future, then said salary may be increased in an amount agreed upon by said first party and the Directors of said Company.

"Said first party shall purchase forty aditional shares of preferred stock of the par value of $100.00 each on or before April 15, 1930, and pay for said preferred stock in cash on or before said date, and he shall receive twenty shares of stock of said company of no-par value for the consideration paid for said forty shares of preferred stock; and said first party shall have the further option and right to purchase from Gillespie & Schwan, Inc., fifty additional shares of no-par value stock in said corporation at any time between January 15, 1931, and February 15, 1931, at the then book value of said no-par value stock plus twenty-five per cent premium at said time.

"The said second parties agree and bind themselves that if at any time within five years employment of said first party shall be terminated by the corporation and his services dispensed with, they will each purchase from said first party at his option, one-third of the preferred stock held by said first party in said company, at its par value of $100.00 per share, on condition that said first party shall surrender one share of no-par value stock to said second parties with each two shares of par value stock which they may so purchase.

"Said second parties shall have the right to have said company purchase said stock, if said first party desires to sell, at the time said first party may cease to be employed by said Company, provided said company is in financial condition to purchase said stock, but if said company is not in financial condition to purchase said stock, then said second parties agree and bind themselves, their heirs and legal representatives, each to purchase one-third of the said par value stock as hereinabove stated at any time within the above mentioned five years said first party's employment shall be terminated by said company, if said first party desires to sell same.

"It is mutually understoood and agreed that the preferred par value stock in said company shall provide for an annual dividend of ten per cent.

"In the event of a lawsuit as to compliance with this contract by either the first or second parties, then it is mutually agreed that the party who shall lose, shall pay the other party a reasonable attorney's fee to be fixed by the court trying the case.

"WITNESS OUR HANDS IN DUPLICATE, This the 5th day of November, 1929.

(Signed)  A. D. Thompson
First Party
H. A. Kinnison
W. Schwan
A. T. Powell
Second Parties."

The petition alleged that the corporation was organized as contemplated by the terms of the contract; that plaintiff began working for the corporation at the named salary and continued in that capacity until on or about May 24, 1932, when he was discharged by the company or its receiver. Further allegation in that connection was that the company did not pay his salary for March, April or May, 1932. It was alleged that plaintiff performed the obligations imposed upon him by the contract; that he purchased and paid for 60 shares of preferred stock at the time the corporation was organized and before April 15, 1930,

he purchased or caused to be purchased 40 additional shares of such preferred stock. Specifically alleging the manner in which plaintiff complied with the obligation to purchase 40 additional shares by April 15, 1930, the petition states that at the time of the execution of the contract he made an additional contract with Kinnison and Schwan as follows:

"GILLESPIE & SCHWAN, INC.

DALLAS, TEXAS     NOVEMBER 4th, 1929.

"Mr. A. D. Thompson,
  1203 North Windomere St.,
  Dallas, Texas.
  Dear Sir:

"Referring to your contract covering the purchase of stock in the Schwan Gas Burner Company and particularly to paragraph 5 of that contract in which you agree to purchase forty additional shares of preferred stock of the par value of $100.00 per share on or before April 15, 1930, we, the undersigned, agree to purchase twenty of these shares in the event that you are not able or do not desire to purchase more than twenty of these shares.

"It is our understanding that you may purchase the full forty shares if you so desire.

(Signed)  H. A. Kinnison
(Signed)  W. Schwan."

It was alleged that within the time specified the plaintiff purchased and paid for 37½ of the 40 shares and Kinnison and Schwan purchased and paid for 2½ of said shares that on May 23, 1932, a receiver of the corporation was duly appointed by a court in Dallas County; that the receiver terminated plaintiff's employment and thereafter all of the assets of the corporation were sold. It was further alleged that plaintiff had tendered to each of the defendants 1/3 of 97½ shares of preferred stock and one share of common stock for each 2 shares of preferred stock, and that the defendants had refused to pay the plaintiff the agreed price therefor, but had wholly breached their contract.

■■ A careful consideration of the contract as a whole has led us to the conclusion that the Court of Civil Appeals correctly held that the general demurrer was improperly sustained. The petition for writ of error attacks the holding of the Court of Civil Appeals on the ground that the contract was one of suretyship or guaranty from which the defendant, Powell, was released by virtue of the execution of the supplemental contract with Kinnison and Schwan, which supplemental contract materially

varied the terms of the original contract. We can not agree with this contention for two reasons. In the first place the original contract was not a contract of suretyship. It was a primary undertaking by Powell and associates, which in no sense bound or purported to bind the corporation thereafter to be organized. It created no contractual relationship between Thompson and the corporation and there was therefore no contract upon which Powell and associates were sureties. We agree with this language of the Court of Civil Appeals:

"The obligations of the defendants to the plaintiff were primary obligations, and not those by which they were under certain contingencies to become secondarily liable."

■ In the second place the supplemental agreement between plaintiff and Kinnison and Schwan did not novate the original contract. It did not undertake to change or modify any term or obligation thereof, but merely evidenced an agreement on the part of Kinnison and Schwan to perform a portion of one of plaintiff's obligations in the event he should be unable to do so. We attach no legal significance to the fact that that agreement was made by two of the parties to the original contract, the effect thereof being the same as if plaintiff had entered into it with two strangers to the original contract. It was a method employed by plaintiff to insure his ability to comply with his obligations. The dominant purpose of defendants in entering into the original contract was to make provision whereby the corporation should receive the $10,000.00 which plaintiff obligated himself to pay for the stock, and the fact that he procured other persons to furnish a portion of that sum should not be construed as a failure on his part to fulfill his obligation.

■ It is insisted that according to the allegations of the petition the condition or contingency casting liability upon the defendants to purchase plaintiff's stock has not arisen. The contention is pressed that the obligation of the defendants to purchase such stock was to arise by the terms of the contract when and if the corporation terminated plaintiff's employment and dispensed with his services, and that since the petition alleged that the receiver discharged him the contingency casting liability upon defendants has not arisen. The condition is expressed in one place in this language: " * * * if at any time within 5 years employment of said first party shall be terminated by the corporation and his services dispensed with * * *," while in another place the phrase, " * * * and his services dispensed with * * * " is omitted. The question is, do the allegations of the petition as a whole show that the corporation terminated plain-

tiff's employment? They show that his employment has been terminated and his services have been dispensed with through no voluntary act of his own. The receiver could not terminate his employment by the corporation, but could only suspend it during the period of the receivership. The corporation became insolvent and its affairs were wound up. It paid plaintiff no salary after February, 1932. The appointment of a receiver is not alleged to have been the cause of the inability of the corporation longer to transact business, but rather the result thereof. If the contract, taken as a whole, is to be construed as an obligation merely to guarantee plaintiff against an affirmative discharge by the corporation, then defendants are probably correct in contending that the condition making them liable is not alleged to have arisen. But we construe the contract as evidencing a different intention of the parties. By its terms plaintiff agreed to invest a large sum of money in an enterprise to be launched by defendants. The possible inability of the corporation to continue solvent over a five year period was doubtless the principal contingency against which plaintiff desired protection. It would appear from the following language of the contract that this is exactly what plaintiff desired to protect himself against:

" * * * but if said company is not in financial condition to purchase said stock, then said second parties agree and bind themselves, their heirs and legal representatives, each to purchase one-third of the said par value stock as hereinabove stated at any time within the above mentioned five years said first party's employment shall be terminated by said company, if said first party desires to sell same."

Had planitiff not had some doubts or misgivings about the future of the corporation, there would have been no reason for his exacting the agreement by its organizers to repurchase his stock at its par value. The defendants had confidence in the enterprise which they were about to launch, and were therefore willing personally to guarantee plaintiff against loss on his investment. The contingency which would most likely result in a loss to him was the future insolvency of the concern. The inability of the company further to carry on and pay plaintiff's salary and the sale of all its assets and winding up of its affairs effectually terminated plaintiff's employment. That termination was the result of the insolvency of the corporation and not by operation of law. The corporation terminated plaintiff's employment by suffering itself to become insolvent just as certainly as if it had affirmatively discharged him. We think that a fair construction of the contract as a whole in connection with the allega-

tions of the petition leads to the conclusion that the corporation terminated plaintiff's employment.

The Court of Civil Appeals correctly held that the petition was good as against a general demurrer and its judgment is accordingly affirmed.

Opinion adopted by the Supreme Court January 19, 1938.